NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                              Chapter 11

    652 WEST 160TH LLC,                  Case No. 04-18038 (ALG)

    Debtor.

------------------------------------------------------------x

**MEMORANDUM OF OPINION**

A P P E A R A N C E S:

ROBINSON BROG LEINWANT GREENE
GENOVESE & GLUCK, P.C.
Attorneys for Debtor
  By:    Fred B. Ringel, Esq.
        Scott A. Steinberg, Esq.
1345 Avenue of the Americas
New York, New York 10105

CLEARY GOTTLIEB STEEN & HAMILTON, LLP
Attorneys for Tenants Committee
  By:    Sean O'Neal, Esq.
        G. Alexander Bongartz, Esq.
One Liberty Plaza
New York, New York 10006

NORTHERN MANHATTAN IMPROVEMENT
CORP. LEGAL SERVICES
Attorneys for Tenants Committee
  By:    Matthew J. Chachere, Esq.
76 Wadsworth Avenue
New York, New York 10033

NEW YORK CITY LAW DEPARTMENT
Office of the Corporation Counsel
  By:  Philip M. Caal, Esq.
100 Church Street
New York, New York 10007

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

In a prior decision in this case, the Court held that the City of New York (the "City") was entitled to relief from the automatic stay to effectuate a foreclosure it had commenced based on its lien for unpaid taxes. It also found ample evidence that the case had been filed in bad faith. *In re 652 West 160th LLC*, 330 B.R. 455 (Bankr. S.D.N.Y. 2005). The Court held, nevertheless, that the Debtor might have a claim under § 506(c) of the Bankruptcy Code to reimbursement for structural improvements that the Debtor had made at the City's behest during the course of the Chapter 11 proceedings. *Id.* at 469, citing *In re Bennett Funding Group, Inc.*, 1997 Bankr.LEXIS 2359, at *87-88 (Bankr. N.D.N.Y. 1997).

The Debtor thereafter filed a motion under § 506(c) seeking to recover its costs for certain alleged structural improvements to the property. The motion was opposed by the City as well as a tenant cooperative to which the City had transferred ownership of the property subsequent to the foreclosure.[1] The parties thereafter engaged in discovery, and the Debtor reduced its initial § 506(c) claim of approximately $230,000 to $47,700.

The matter thereafter came on for an evidentiary hearing on the issue whether the costs that the Debtor had incurred had resulted in improvements that benefited the property and could support a charge under § 506(c). Testimony was given by the Debtor's contractor; by a construction project manager from the City's Department of Housing Preservation and Development ("HPD"); from the architect retained by the tenant cooperative who has supervised the subsequent renovation of the building; and

---

[1] Under a program designed to benefit low-income tenants, the City can transfer ownership of a property that the City has acquired to a tenant cooperative and provide long-term subsidized financing to rehabilitate the property.

2

from a representative of Northern Manhattan Improvement Corp., a non-profit housing development group and sponsor of the renovation and, at the time of the hearing, the title holder of the property.

Based on the record, the Court finds that none of the costs for which the Debtor seeks a § 506(c) charge have resulted in any actual benefit to the collateral. Most of the costs were incurred in connection with structural work required in the "two-line" apartments, and there is no question that HPD demanded that this work be performed during the course of the Chapter 11 proceedings and that it was done to the satisfaction of the HPD inspector. However, the architect in charge of the subsequent renovation of the building, who has many years of relevant experience, testified in detail, credibly and without contradiction, that this work was of no value in connection with the broader renovation of the building that was subsequently undertaken. That renovation had a budget of $7.2 million, including about $5 million for construction, and the Debtor did not allege that the project was improvident or unreasonable. It was the renovation that the City proposed to carry out when the Debtor's Chapter 11 petition intervened.

The architect testified that, in light of the overall project, the structural improvements that the Debtor performed were, in and of themselves, not adequate to meet the requirements of the City's Buildings Department for a renovation designed to last 30 to 40 years. She testified as to the different requirements of the Department of Buildings and HPD and that compliance with HPD standards may not be sufficient in some circumstances. For example, a foundational slab "was tremendously deteriorated," regardless of whether it was built to Code. (Hr'g Tr. 93.) The Debtor's foundation work overall was not built to last, and not done according to Code. (Hr'g Tr. 102.) Long-

3

spanning support beams were rotted and would eventually fail. (Hr'g Tr. 75-76.) She further explained that the costs of bathroom fixtures installed in the "two-line," which the Debtor sought to recover, were of no value in light of the fact that all of the bathrooms in all of the apartments were redone, and it was impractical to keep any of the old fixtures. (Hr'g Tr. 97.) Moreover, the architect twice stated that as a licensed professional, she could not accept the work of the Debtor's contractor as adequate for the renovation. (Hr'g Tr. 87, 102.) In short, the architect testified conclusively that it was not possible to make use of any of the earlier renovations "because there was too much work that had to be done." (Hr'g Tr. 91.)

An application under § 506(c) to impose "the reasonable, necessary costs and expenses of preserving" property that secures a creditor's claim rests on the premise that the secured creditor has benefited from these costs. *See General Electric Credit Corp. v. Levin & Weintraub* (*In re Flagstaff Foodservice Corp.*), 739 F.2d 73, 76 (2d Cir. 1984) ("*Flagstaff I*"); *see also In re K&L Lakeland, Inc.*, 128 F.3d 203, 212 (4th Cir. 1997) (purpose of § 506(c) is "to prevent a secured creditor from gaining a windfall at the expense of the estate."). In this case, the City opposed the Debtor's Chapter 11 filing from the outset, and promptly moved for relief from the stay and for an order dismissing the case so that it could effectuate its plan to transfer ownership to the tenants. There is no basis for generally imposing the costs of a bankruptcy case on a secured creditor's collateral. *Flagstaff I*, 739 F.2d at 76. In a later decision in the same case, the Second Circuit held that "The debtor in possession also must show that its funds were expended primarily for the benefit of the creditor and that the creditor directly benefited from the expenditure." *General Electric Credit Corp. v. Peltz* (*In re Flagstaff Foodservice Corp.*),

4

762 F.2d 10, 12 (2d Cir. 1985) ("*Flagstaff II*").  If the City or the tenants received a long-term benefit from the Debtor's expenses, and the renovation costs subsequently incurred were lower, it could be said that the property benefited.  *See*, *e.g.*, *In re AFCO Enters.*, 35 B.R. 512, 516 (Bankr. D. Utah 1983) (§ 506(c) application granted when trustee operated and made repairs to resort property, saving a subsequent owner the expense of maintenance and improvements as a start-up requirement).  However, the record establishes that there were no such benefits here, and the Debtor's application under § 506(c) is denied.

Respondents are directed to settle an order denying the § 506(c) application on the Debtor's counsel and the U.S. Trustee.  It appearing that there is no further reason for this case to remain open, in light of the 2005 decision, the order should presumably also provide for dismissal of the case.

Dated: New York, New York
       March 18, 2008

                                             _/s/ Allan L. Gropper_____
                                             ALLAN L. GROPPER
                                             UNITED STATES BANKRUPTCY JUDGE